UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CHRISTOPHER A. MITCHELL,

    Plaintiff,

  v.                                    Case No. 2:17-cv-905
                                          JUDGE GEORGE C. SMITH
                                          Magistrate Judge Elizabeth P. Deavers

MICHAEL WEINIG, INC.,

    Defendant/
    Third-Party Plaintiff,

  v.

APPALACHIAN WOOD FLOORS, INC.,

    Third-Party Defendant.

## OPINION AND ORDER

This matter is before the Court upon Third-Party Defendant Appalachian Wood Floors, Inc.'s Motion for Judgment on the Pleadings ("Appalachian's Motion") (Doc. 32) and Third-Party Plaintiff Michael Weinig, Inc.'s Motion for Summary Judgment ("Weinig's Motion") (Doc. 37). The motions are fully briefed and ripe for disposition. For the following reasons, Appalachian's Motion is **GRANTED** and Weinig's Motion is **DENIED**.

                                I.      BACKGROUND

Defendant and Third-Party Plaintiff Michael Weinig, Inc. imported and installed a wood processing machine in Third-Party Defendant Appalachian Wood Floors, Inc.'s facility in Portsmouth, Ohio. (Doc. 1, Compl. ¶¶ 4, 9). On October 22, 2015, Plaintiff Christopher Mitchell was injured when attempting to retrieve a piece of lumber that had fallen into the machine. (*Id.*

¶¶ 11–14). Mitchell commenced this action on October 18, 2017 asserting claims against Weinig for product defect, negligent installation, and improper training. (*Id.* ¶¶ 20–36). Mitchell also filed a workers' compensation claim for his injuries, pursuant to which Ohio's Bureau of Workers' Compensation had paid out over $75,000 as of February 9, 2018. (Doc. 32-1, Letter from Bureau of Worker's Compensation).

After answering Mitchell's Complaint, Weinig commenced a third-party claim against Appalachian seeking indemnification under the purchase order for the wood processing machine. (Doc. 20, 3d Party Compl.). Weinig also asserts a breach of contract claim for failure to obtain insurance with Weinig listed as a named insured, as required by the purchase order. (*Id.*). Finally, Weinig also claims attorneys' fees associated with bringing its third-party complaint against Appalachian as provided by the purchase order. (*Id.*). After answering Weinig's Third-Party Complaint, Appalachian moved for judgment on the pleadings, asserting that Weinig's third-party claims are barred under Ohio's Workers' Compensation Act, R.C. § 4123, *et seq.*, and Section 35, Article II of the Ohio Constitution. (Doc. 32). Weinig then moved for summary judgment on liability against Appalachian, arguing that the purchase order was governed by North Carolina law pursuant to a choice-of-law provision, and that its claims are viable under North Carolina law. (Doc. 38).

## II.     STANDARDS OF REVIEW

### A.     Judgment on the pleadings

Appalachian brings its motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The standard of review for a motion for judgment on the pleadings under Rule 12(c) is the same as that used to address a motion to dismiss under Rule 12(b)(6). *Id.*; *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007).

Rule 12(b)(6) permits dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." To meet this standard, a party must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A pleading will satisfy this plausibility standard if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint;" a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Flex Homes, Inc. v. Ritz-Craft Corp of Mich., Inc.*, 491 F. App'x 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

In sum, "[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)).

**B.     Summary judgment**

Weinig moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 716–17 (6th Cir. 2012). The Court's purpose in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists if the Court finds a jury could return a verdict, based on "sufficient evidence," in favor of the nonmoving party; evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249–50.

The party seeking summary judgment shoulders the initial burden of presenting the Court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (after burden shifts, nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury").

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). But self-serving affidavits alone are not enough to create an issue of fact

sufficient to survive summary judgment. *Johnson v. Washington Cty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013) (Marbley, J.). "The mere existence of a scintilla of evidence to support [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Anderson,* 477 U.S. at 251.

### III. DISCUSSION

There are no disputed issues of fact relevant to either motion. The Court must first decide, as a matter of law, whether to apply North Carolina law, rather than Ohio law, to the purchase order's indemnity provision. "Federal courts sitting in diversity must apply the choice-of-law principles of the forum. Accordingly, Ohio choice-of-law principles are applicable in this case." *Tele-Save Merch. Co. v. Consumers Distrib. Co.*, Ltd., 814 F.2d 1120, 1122 (6th Cir. 1987) (citing *Klaxon Co. v. Stentor Electric Manufacturing Company*, 313 U.S. 487 (1941)). "[A]n actual conflict between Ohio law and the law of another jurisdiction must exist for a choice-of-law analysis to be undertaken." *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 112 Ohio St. 3d 470, 2006-Ohio-6553, 861 N.E.2d 109, ¶ 25. The Court will therefore first determine whether an actual conflict between Ohio and North Carolina law exists as to the enforceability of the indemnity provision. If so, the Court will determine which state's law should be applied. Finally, the Court will evaluate the enforceability of the indemnity provision under the relevant law.

**A. Existence of a conflict**

**1. Ohio law**

As detailed by Appalachian, Ohio law generally does not recognize claims against an employer, who has complied with Ohio's workers' compensation requirements, for indemnification of a third party for liability to an employee for injuries sustained within the scope of employment. Ohio Revised Code § 4123.74 provides in pertinent part:

5

> Employers who comply with section 4123.35 of the Revised Code [requiring employers to make payments to Ohio's workers' compensation fund] shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment . . . .

Similarly, Ohio's Constitution provides:

> [Workers' compensation] shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease.

Ohio Const. Article II, Section 35. *See also Taylor v. Acad. Iron & Metal Co.*, 36 Ohio St. 3d 149, 152, 522 N.E.2d 464, 467 (1988), *overruled on other grounds by Conley v. Brown Corp. of Waverly*, 82 Ohio St. 3d 470, 1998-Ohio-194, 696 N.E.2d 1035 (holding that Ohio Revised Code § 4123.74 "demonstrate[s] the legislature's intention to provide against liability of the employer to *anyone* for damages arising from any injury, disease or bodily condition of an employee arising out of his employment.").[1]

This immunity can be waived by contract; however, any such waiver or agreement of indemnity must contain an "express and specific waiver" of the employer's workers' compensation immunity:

> We believe that before this immunity [provided by Ohio's workers' compensation scheme] may be considered to have been waived, the waiver must be express, and must refer specifically to this particular immunity. Although express indemnity agreements worded in general terms may suffice for other purposes, we are not inclined to construe them as effective waivers of this immunity absent a clear evocation of the parties' intent to that effect.

---

[1] *Taylor* ultimately held that Ohio's workers' compensation statutes bar claims by a third-party tortfeasor against an employer who has committed an intentional tort against an employee. 36 Ohio St. 3d at 153. *Conley* recognized that an employer's commission of an intentional tort will always take place outside the employment relationship, meaning that the workers' compensation statutes have no relevance. 82 Ohio St. 3d at 479. Therefore, *Taylor*'s pronouncement concerning a third-party's standing to bring a claim against an employer who has committed an intentional tort was untenable. *Id. Conley* did not, however, overrule *Taylor* to the extent *Taylor* barred third-party claims against an employer who was *not* alleged to have committed an intentional tort—which is the situation at bar. *See Romig v. Baker Hi-Way Express, Inc.*, 5th Dist. Tuscarawas No. 2011AP–02–0008, 2012-Ohio-321, ¶ 51.

*Kendall v. U.S. Dismantling Co.*, 20 Ohio St. 3d 61, 65, 485 N.E.2d 1047, 1051 (1985). At least one Ohio appellate court has "interpret[ed] this language from *Kendall* to mean that the indemnity agreement must refer specifically to the employer's workers' compensation immunity or to R.C. 4123.74." *Best v. Energized Substation Serv.*, 9th Dist. Lorain No. 93CA005737, 1994 WL 440471, at *6 (Aug. 17, 1994). *See also Pentaflex v. Express Servs., Inc.*, 130 Ohio App. 3d 209, 215, 719 N.E.2d 1016, 1020 (2d Dist. 1998) (declining to enforce an indemnification provision that "does not refer specifically to the immunity arising from the workers' compensation statute and constitutional provision.").

The indemnity provision in the purchase order between Appalachian and Weinig provides in relevant part:

> 9. <u>Indemnification</u>. [**Appalachian] acknowledges, warrants, and agrees that it shall maintain adequate insurance against all risks and to cover its obligations herein and that [Weinig] shall be covered as named additional insured and shall not be liable in any manner for and that [Appalachian] shall defend, indemnify and hold [Weinig] harmless from and against any and all risk or claims relating to the [wood processing machine] or any additions thereto. Said risks shall specifically include** all claims, causes of action, suits, proceedings, costs, fees, damages, penalties, losses, expenses, liabilities, stoppages, lost business or profits, physical damage, destruction, breakage, casualty loss, fire, theft, and **expenses (including attorney's fees)**; claims for breach of warranty (express or implied) or misrepresentation, personal injury, property damage, patent infringement, or breach of contract claim; or claims for any intentional or negligent act or omission, including without limitation: failure to warn; unsafe or defective product, design, or manufacture; or product liability claim, in any form whatsoever by [Appalachian] or its agents, employees, insurance carriers, workers compensation insurance carrier, successors, assigns or third parties, whether such claim or cause of action is based upon tort, strict liability, negligence, comparative negligence, contribution, indemnification, common law or statutory basis, UCC, subrogation or any other theory of recovery, and whether or not the acts or omissions of [Weinig], its employees or agents are alleged to be negligent and regardless of whether or not [Weinig] might otherwise be liable.

(Doc. 35-1, Purchase Order ¶ 9) (bold added). The provision is lengthy and expansive, but it is undisputed that it does not refer specifically to Appalachian's workers' compensation immunity or to Ohio Revised Code § 4123.74. Accordingly, under Ohio law as stated in *Kendall*, this

7

indemnity provision would not be enforceable and Weinig would not be permitted to maintain its claim for indemnification against Appalachian.

## 2. North Carolina law

North Carolina' approach to indemnity agreements in the context of workers' compensation claims is not so clear. Weinig contends that "North Carolina courts have consistently upheld the validity of defense and indemnity agreements with language nearly identical to that in Paragraph 9 of the Weinig-[Appalachian] Contract." (Doc. 38, Weinig's Mot. at 7). However, none of the cases cited by Weinig involved a general indemnity provision (with no specific reference to workers' compensation immunity) in the context of an indemnification claim by a third party against a complying employer.

Yet the Court ultimately agrees with Weinig's conclusion as to the enforceability of the indemnity agreement under North Carolina law. None of the available authorities indicate an intention by the North Carolina courts or legislature to require specific reference to workers' compensation immunity in the manner of Ohio. Importantly, North Carolina's workers' compensation statutes (unlike Ohio's) explicitly contemplate contractual indemnification of a third party by a complying employer. N.C.G.S. § 97-10.2(e) (limiting an employer's liability to a third party, "except any right which may exist by reason of an express contract of indemnity between the employer and the third party, which was entered into prior to the injury to the employee.").[2]

---

[2] Appalachian notes that no case law is available to shed light on the meaning of "express contract of indemnity" for the purposes of N.C.G.S. § 97-10.2(e), but posits that the North Carolina legislature may have intended that it be giving the same meaning as under Ohio law, which Appalachian contends requires specific reference to workers' compensation immunity. (Doc. 43, Appalachian's Resp. at 11 n.7). However, it is clear from Ohio case law that Ohio's own use of "express" refers not to the content of an agreement, but to its form—that is, an "express" contract stands in contrast to an "implied" contract. *See Kendall*, 20 Ohio St. 3d at 65 (holding "express indemnity agreements worded in general terms" insufficient to permit third-party claims against complying employers). The use of "express" in the North Carolina statute therefore lends no support for a specific reference requirement akin to Ohio's.

Citing this statute, the North Carolina Supreme Court enforced an indemnity agreement between an employer and a third party, notwithstanding the employer's workers' compensation immunity. *Gibbs v. Carolina Power & Light Co.*, 265 N.C. 459, 465–67, 144 S.E.2d 393, 399–400 (1965). While the indemnity provision in that case did include a specific reference to workers' compensation liability, the *Gibbs* decision did not highlight or rely on this fact. *Id.* at 466–67 (stating only that "the Act recognizes the right of third parties to enforce express contracts of indemnity against employers" and "the statutory recognition of third parties' rights under such contracts is a legislative declaration of public policy."). Nothing in the opinion suggests that the *Gibbs* court would have reached a different result absent the specific reference.

Further, ten years prior to *Gibbs*, the Eastern District of North Carolina enforced a general indemnity provision (requiring the employer to "indemnify [the third party] for any and all damages to persons or property that occur as a result of [the employer's] fault or negligence") against an employer. *Johnson v. United States*, 133 F. Supp. 613, 614–15 (E.D.N.C. 1955).[3] Although the employer argued that it was immune from the third party's claims under the North Carolina workers' compensation statutes, the *Johnson* court found the indemnity agreement controlling and denied the employer's motion to dismiss on that basis. *Id.* at 615.

Thus, the available authorities suggest that North Carolina would enforce the indemnity agreement between Weinig and Appalachian. As a result, a conflict exists between Ohio and North Carolina law and the Court must undertake a choice-of-law analysis.

---

[3] Although *Johnson* involved a provision requiring the employer to indemnify the third party only for the employer's negligence, North Carolina will also enforce exculpatory provisions requiring the indemnitor to indemnify the indemnitee for the *indemnitee*'s negligence, provided the language of the provision is sufficiently clear. *Schenkel & Shultz, Inc. v. Hermon F. Fox & Assocs., P.C.*, 362 N.C. 269, 274–75, 658 S.E.2d 918, 922 (2008). Thus, the fact that the indemnification provision in the purchase order requires Appalachian to indemnify Weinig for Weinig's negligence does not change this result.

9

**B.     Choice of law**

The analysis begins with the purchase order's choice-of-law provision: "All claims between [Weinig] and [Appalachian] shall be governed exclusively by the laws of the state of North Carolina, U.S.A., exactly as if all of the parties were sophisticated commercial entities located within said jurisdiction." (Doc. 35-1, Purchase Order ¶ 10). When the parties to a contract have chosen the law of a particular state to govern their contract, Ohio courts apply § 187(2) of the Restatement (Second) of Conflict of Laws. *Schulke Radio Prods., Ltd. v. Midwestern Broad. Co.*, 6 Ohio St. 3d 436, 438–39, 453 N.E.2d 683, 686 (1983). That is:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> > (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> >
> > (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws, § 187(2). In other words, the purchase order's choice-of-law provision will be enforced unless one of the two exceptions in § 187(2) applies.

Appalachian concedes that "North Carolina has a substantial relationship to the parties, because it is the state where Weinig is headquartered and where certain activities took place; moreover the choice of North Carolina would otherwise be 'reasonable.'" (Doc. 43, Appalachian's Resp. at 6). The exception in § 187(2)(a) is therefore not implicated.

However, Appalachian argues that under § 187(2)(b), enforcing the indemnity agreement would be contrary to Ohio's fundamental policy of employer immunity under Ohio's workers'

compensation statutes and that Ohio has a materially greater interest than North Carolina in the determination of Weinig's claims. The Court agrees.

Ohio's requirement of a specific reference to workers' compensation immunity before an indemnity agreement will be enforced against an employer is a fundamental policy. Although differing results between states is insufficient to demonstrate that a policy is fundamental, "this case involves more than simply two legal systems which happen to reach a different result." *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 926–27 (6th Cir. 2006). As recognized by the Restatement comments, "a fundamental policy may be embodied in a statute which makes one or more kinds of contracts illegal." Restatement (Second) of Conflict of Laws, § 187, cmt. g. This is the situation before the Court: Ohio courts have interpreted § 4123.74 to bar enforcement of general indemnity agreements like the one between Weinig and Appalachian. *Kendall*, 20 Ohio St. 3d 61.

Moreover, Ohio has a materially greater interest in "the determination of the particular issue," *i.e.*, whether Appalachian is liable to Weinig in the face of Ohio's immunity for complying employers against claims by third parties. The injuries giving rise to Weinig's claims against Appalachian occurred in Ohio, and it is Ohio's workers' compensation system that is implicated by Weinig's claims, not North Carolina's. While Weinig argues that its claims sound in contract, and therefore the particulars of Mitchell's underlying tort claim are not relevant, this argument is unconvincing. Weinig seeks to recover on a contract of indemnity, which will always implicate an underlying injury. Furthermore, because the wood processing machine that is the subject of the purchase order was installed in Appalachian's facility in Ohio, virtually any underlying liability that could form the basis of an indemnity claim under the purchase order would arise in Ohio.

11

For the same reasons, the factors under Restatement § 188 would weigh in favor of application of Ohio law in the absence of an effective choice by the parties. Although standard aspects of contract negotiation create a non-trivial relationship between the purchase order and North Carolina (Weinig is based there; Weinig negotiated the purchase order from there; Weinig handled the logistics of importing and transporting the wood processing machine that is the subject of the purchase order from there), reciprocal factors connected to Ohio (Appalachian is based there; Appalachian negotiated the purchase order from there; the wood processing machine was installed there; Mitchell's injuries occurred there; Mitchell received Ohio workers' compensation benefits there) equal and outweigh those connected to North Carolina. *See* Restatement (Second) of Conflict of Laws, §§ 6, 188.

In sum, application of North Carolina law would be contrary to Ohio's fundamental policy of protecting complying employers from third-party claims. Further, Ohio has a materially greater interest than North Carolina in determining whether to enforce the purchase order's indemnity agreement, and under § 188, Ohio law would be applied absence of an effective choice by the parties. As a result, Restatement § 187(2)(b) bars application of North Carolina law to the purchase order's indemnity provision and Ohio law applies instead.

## C. Application of Ohio law to Weinig's indemnity claims

As discussed above, the purchase order's indemnity provision does not specifically refer to Appalachian's immunity under Ohio's workers' compensation scheme. *Kendall*, 20 Ohio St. 3d at 65. Moreover, "the immunity granted to a complying employer by R.C. 4123.74 extends to attorney fees and costs arising from damages for which the complying employer is immune from liability." *Hehman v. Maxim Crane Works,* No. CA2010-01-009, 2010 WL 3002383, *6 (Ohio Ct. App. 12th Dist. 2010); *see also Best*, 1994 WL 440471, at *5 ("[W]e find the Supreme Court implicitly recognized that an indemnity agreement for legal fees and costs resulting from work-

related injuries is subject to the immunity granted a complying employer in R.C. 4123.74."). As a result, Weinig can neither compel Appalachian to indemnify Weinig for Mitchell's claims against it, nor compel Appalachian to pay Weinig's costs and attorneys' fees incurred in bringing its third-party claims against Appalachian.

Weinig's only remaining claim is for breach of contract due to Appalachian's failure to list Weinig as an additional named insured on Appalachian's liability insurance policy. Under Ohio law, the elements of a breach of contract claim are: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach. *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012). Similarly, North Carolina requires a plaintiff claiming a breach of contract to establish the existence of a valid contract and a breach of the terms of that contract. *Eli Research, Inc. v. United Commc'ns Grp., LLC*, 312 F. Supp. 2d 748, 755 (M.D.N.C. 2004). The parties have not argued that a conflict exists between Ohio and North Carolina on this point.

The purchase order is a valid contract (to the extent it does not run afoul of Ohio Revised Code § 4123.74), and it is undisputed that Weinig performed under the contract and that Appalachian did not add Weinig as an additional named insured to its insurance policy. If this case did not arise out of an injury compensable by Ohio's workers' compensation scheme, the analysis would end there in Weinig's favor.

However, the Court agrees with Appalachian that its nominal contractual obligation to add Weinig as an additional named insured stems from Weinig's claimed but unenforceable right to indemnity by Appalachian. The requirement to add Weinig as a named insured is contained in the same paragraph titled "Indemnification" and requires Appalachian to "**maintain adequate insurance** against all risks and **to cover its obligations herein** and that [Weinig] shall be covered

as named additional insured . . . . **and that [Appalachian] shall defend, indemnify and hold [Weinig] harmless** . . . ." (Doc. 35-1, Purchase Order ¶ 9) (emphasis added). In other words, the purchase order nominally requires Appalachian to obtain insurance to cover its obligation to indemnify Weinig. But as the Court has just concluded, Appalachian has no obligation to indemnify Weinig. The requirement to obtain insurance, and add Weinig as an additional named insured, is therefore illusory.[4] In essence, there is no requirement to add Weinig as a named insured for Appalachian to have breached. Accordingly, Weinig cannot succeed on its breach of contract claim.

## IV. CONCLUSION

For the foregoing reasons, Appalachian's Motion is **GRANTED** and Weinig's Motion is **DENIED**. Weinig's Third-Party Complaint against Appalachian is **DISMISSED** in its entirety. The Clerk shall remove Documents 32 and 37 from the Court's pending motions list.

**IT IS SO ORDERED.**

          */s/ George C. Smith*
          **GEORGE C. SMITH, JUDGE**
          **UNITED STATES DISTRICT COURT**

---

[4] To the extent Weinig maintains that it is entitled to insurance coverage for claims not subject to Appalachian's immunity under Ohio Revised Code § 4123.74, those claims are not before this Court and Weinig has alleged no injury in that context.